# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL RESIDENT MATCHING
PROGRAM,

*Plaintiff*,

v.

MAHMOUD ALASHRY,

*Defendant.*

Civil Action No. 17-2557 (RDM)

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion to remand, Dkt. 7, pursuant to 28

U.S.C. § 1447(c). Plaintiff National Resident Matching Program ("NRMP") originally filed suit

to vacate an arbitration award in favor of Defendant Mahmoud Alashry ("Dr. Alashry") in the

D.C. Superior Court. Dkt. 9-2 at 2. On November 28, 2017, Dr. Alashry removed the case to

this Court. Dkt. 1. NRMP argues that the Court lacks subject-matter jurisdiction because the

arbitration agreement specifies that D.C. law governs this dispute, and, because the amount in

controversy is insufficient to establish diversity jurisdiction. The Court disagrees and will,

accordingly, **DENY** Plaintiff's motion to remand, Dkt. 7.

## I. BACKGROUND

### A.    Factual Background

NRMP is an Illinois-based, not-for-profit corporation with its principal place of business

in Washington, D.C. Dkt. 1 at 1. NRMP "provide[s] a service by which it matches medical

school students and graduates to positions in United States graduate medical education residency

and fellowship training programs." *Id.* Dr. Alashry is a citizen of Egypt—where he obtained his

medical degree—and currently resides in Florida. Dkt. 1-1 at 1 (Alashry Decl. ¶¶ 1–2). In 2014,

Dr. Alashry began a post-doctoral research fellowship at Mayo Clinic in Rochester, Minnesota.

*Id.* (Alashry Decl. ¶ 3). During his fellowship, Dr. Alashry "completed the United States

Medical Licensing Examination and obtained a certification from the Educational Commission

for Foreign Medical Graduates." *Id*. He then applied to participate in NRMP's 2016 medical

residency matching program ("Main Residency Match"), and, through that program, matched to

an internal medicine residency program at the North Florida Regional Medical Center

("NFRMC") on March 18, 2016. *Id.* at 2 (Alashry Decl. ¶ 5); Dkt. 10-2 at 11.

    To participate in the Main Residency Match, Dr. Alashry entered into an agreement with

NRMP ("the Match Agreement"). Dkt. 5-2. Section 4.4 of the Match Agreement requires that

each applicant provide "complete, timely, and accurate information" throughout the match

process, and states that "NRMP is authorized to take appropriate action," specified in a later

provision, if "NRMP believes it has credible evidence that an applicant . . . has violated

the . . . [a]greement." *Id.* at 21. On February 22, 2016—before his match date—Dr. Alashry was

arrested for solicitation of prostitution in Minnesota and was subsequently charged on April 1,

2016. Dkt. 10-2 at 11–12; Dkt. 10-2 at 45 (Arb. Award ¶¶ 33–35). He proceeded with the

match, however, and did not disclose this information to either NRMP or the program he

matched with—NFRMC—until May 23, 2016, when he emailed the program director. *Id.* at 46

(Arb. Award ¶ 39), *id.* at 97.

    Due to his arrest and pending charge, Dr. Alashry was not eligible for a J-1 visa and

could not start his residency with NFRMC in June 2016; consequently, NFRMC applied to

NRMP for a waiver of its match commitment to Dr. Alashry, which NRMP granted. *Id.* (Arb.

Award ¶ 42). NRMP then conducted an investigation into whether Dr. Alashry's actions

violated section 4.4 of the Match Agreement and determined that they did. *Id.* (Arb. Award

¶¶ 45–46). In accordance with section 8.2.1 of the Match Agreement, NRMP issued a Panel

Report imposing the following sanctions:

> [T]he NRMP is notifying [Dr. Alashry's medical] school of this violation and asking that it become a part of his permanent record. The NRMP also bars Dr. Alashry for one year from accepting or starting a position in any program sponsored by a Match-participating institution . . . , bars him from participation in future NRMP Matches for two years, and will identify him as a Match violator in the NRMP's Registration, Ranking, and Results (R3) system for two years, effective immediately.

*Id.* at 47 (Arb. Award ¶ 47). Dr. Alashry contested NRMP's finding of culpability. *Id.* at 37

(Arb. Award ¶ 7).

**B.      Procedural Background**

On September 9, 2016, Dr. Alashry filed a demand for arbitration, pursuant to section 15

of the Match Agreement, with the International Centre for Dispute Resolution ("ICDR"),

requesting a declaratory judgment that (1) he did not violate the Match Agreement, (2) the

NRMP lacked jurisdiction to sanction him for conduct that occurred after the conclusion of the

Match process, and (3) all of the sanctions in the Panel Report should be vacated. *Id.* NRMP

responded that the sanctions "imposed [were] appropriate." *Id.* at 38 (Arb. Award ¶ 10). ICDR

appointed Elliot E. Polebaum as the sole arbitrator. *Id.* at 37–38 (Arb. Award ¶¶ 10–11). The

arbitrator conducted a hearing on May 16, 2017, and permitted the parties to submit post-hearing

briefs and replies. *Id.* at 38–39 (Arb. Award ¶¶ 14, 16–18). On July 13, 2017, the arbitrator

issued an award (1) vacating the "findings of violation" in the Panel Report "except insofar as

the Report's violation finding encompasses a violation for untimely disclosure of the pending

criminal charges against Dr. Alashry during the period after April 1, 2016;" and (2) vacating the

"sanctions . . . for violations of section 4.4 of the Agreement [as] arbitrary and capricious." *Id.*
at 59 (Arb. Award ¶¶ 90–91).

On October 13, 2017, NRMP filed suit in D.C. Superior Court seeking to vacate the
arbitration award. Dkt. 9-1; Dkt. 9-2. In lieu of filing a response, Dr. Alashry removed the case
to this Court asserting both diversity and federal question jurisdiction. Dkt. 1 at 4–7. NRMP
now moves to remand, arguing that Dr. Alashry cannot show that the amount in controversy
exceeds $75,000, as required to establish diversity jurisdiction, 28 U.S.C. § 1332(a), or that the
case arises under federal law, 28 U.S.C. § 1331. Dkt. 7. NRMP does not contest that Dr.
Alashry has otherwise complied with the requirements for removal.

## II. ANALYSIS

A defendant may remove a case to federal court if the federal court has original
jurisdiction over the matter. 28 U.S.C. § 1441(a). The fact that the state court—or, here, the
D.C. Superior Court—might have concurrent jurisdiction over NRMP's claim is of no moment;
if the federal court has subject-matter jurisdiction, and if Congress has not expressly precluded
removal, the defendant may elect to litigate in the federal forum. *See Breuer v. Jim's Concrete
of Brevard, Inc.*, 538 U.S. 691, 697–98 (2003); 14B Charles Wright & Arthur R. Miller, *Federal
Practice and Procedure* § 3721, at 2–3 (4th ed. 2009). For the reasons set forth below, the Court
concludes that it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, and that, as a
result, it need not address whether it has diversity jurisdiction. Because the Court has

jurisdiction, and because NRMP does not contest that Dr. Alashry complied with the procedural requirements for removal, the Court will deny NRMP's motion to remand.[1]

## A.    New York Convention

The parties agree that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), 9 U.S.C. § 201 *et seq.*, provides federal district courts with jurisdiction over arbitration agreements and awards that "fall under" the Convention. *See id.* § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.").  Moreover, although the parties do not focus on 9 U.S.C. § 205, that provision is also of particular relevance here: it provides federal courts with removal jurisdiction over proceedings that fall under the Convention.  *See id.* ("Where the subject matter of an action or proceeding . . . relates to an arbitration agreement or award falling under the Convention, the defendant . . . may . . . remove such action or proceeding to the district court of the United States.").  Rather than question that the Convention provides for federal jurisdiction, NRMP argues, instead, that the Convention does not apply here.

---

[1]  As a preliminary matter, the Court asked the parties to submit a joint status report addressing whether the case is now moot.  The parties represented that,

> [g]iven NRMP's need to issue its final report, Alashry's desire to participate in the Match program or to seek employment with a related program again, and the impact to Alashry in the event that NRMP is permitted to disclose its final report, regardless whether he elects to participate in the Match program, there is a time-sensitive and present dispute between the parties that requires judicial resolution.

Dkt. 17 at 2.  The Court is, accordingly, satisfied that there remains a live controversy.  *Contra O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (finding case moot when plaintiffs could not demonstrate "continuing, present adverse effects" of the defendants' actions).

In particular, NRMP contends that its arbitration with Dr. Alashry does not "fall under" the New York Convention because the Convention "specifically carve[s] out awards that are 'entirely domestic in scope.'" Dkt. 7 at 11 (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 94 (2d Cir. 1999)). The Court disagrees. The award at issue here is not "entirely domestic" because—as NRMP concedes—Dr. Alashry is a citizen of Egypt. Dkt. 1-1 at 1 (Alashry Decl. ¶ 1). As such, the plain language of the New York Convention expressly embraces the award. Section 202 provides that an "arbitral award arising out of a legal relationship, . . . which is considered as commercial . . . , falls under the Convention" unless it is "between citizens of the United States" and does not "involve[] property located abroad, envisage[] performance or enforcement abroad, or ha[ve] some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. Based on the statutory language, this Court has set forth a four-factor test:

> An arbitration award falls under the New York Convention if [1] the award arises from a commercial legal relationship between the parties; [2] there was a written agreement to arbitrate disputes arising from that relationship; [3] the agreement provided for arbitration proceedings to take place in a signatory country to the New York Convention; and [4] at least one of the parties is not an American citizen.

*Newco Ltd. v. Gov't of Belize*, 156 F. Supp. 3d 79, 81 (D.D.C. 2015). This case satisfies all four requirements. The award arises from a commercial legal relationship between NRMP and Dr. Alashry; the Match Agreement contains an arbitration clause, Dkt. 5-2 at 35; the agreement specifies that arbitration proceedings shall take place in Washington D.C., *id.*; and Dr. Alashry is an Egyptian citizen, Dkt. 1-1 at 1 (Alashry Decl. ¶ 1).

The case law NRMP relies upon provides no support to the contrary. NRMP quotes a recent Second Circuit decision, *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58 (2d Cir. 2017), for the proposition that the New York Convention applies only to "arbitral

awards 'made' in a foreign country;" "arbitral awards 'made' in the United States that a party

seeks to enforce in a different country;" and "nondomestic arbitral awards." Dkt. 7 at 11

(quoting *CBF Indústria de Gusa S/A*, 850 F.3d at 70). According to NRMP, this means that

"[t]he focus of the Convention is . . . the *situs of the arbitration*." *Id.* (quoting *Smith/Enron*

*Cogeneration Ltd.*, 198 F.3d at 94). But NRMP takes that quote out of context. The court in

*CBF Indústria de Gusa S/A* further explained that "a non-domestic arbitral award" falls under the

New York Convention as long as it was "made" in the United States—that is, the parties agreed

to arbitrate in the United states—and it "involves entities that are not U.S. citizens." 850 F.3d at

73. NRMP's reliance on various district court opinions is similarly misplaced. As Dr. Alashry

correctly observes, those cases involved arbitrations between two U.S. citizens, and, are thus,

inapposite. *See* Dkt. 18 at 6 (citing *Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335,

1338 (S.D. Fla. 2013); *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361, 1363–64 (S.D. Fla.

2009); *Ensco Offshore Co. v. Titan Marine LLC*, 370 F. Supp. 2d 594, 595 (S.D. Tex. 2005);

*Colo. Mills LLC v. Sunrich, LLC*, No. 10-cv-00673, 2010 WL 1413173, at *1 (D. Colo. Apr. 2,

2010)).

Accordingly, both the plain language of 9 U.S.C. § 202 and the precedent interpreting

that provision dictate that the award at issue here "falls under" the New York Convention. The

Court therefore has "original jurisdiction over [this] action . . . regardless of the amount in

controversy," 9 U.S.C. § 203; *see also* 28 U.S.C. § 1331, and removal jurisdiction, 9 U.S.C.

§ 205; *see also* 28 U.S.C. § 1441(a).

**B.     Match Agreement**

NRMP further contends that, notwithstanding the New York Convention, the terms of the

Match Agreement designate the D.C. Superior Court as the exclusive forum for adjudicating

disputes arising from the arbitration.  Dkt. 7 at 14; Dkt. 20 at 9–10.  NRMP points to two sections of the Match Agreement.  Section 15 provides: "The arbitrator shall not have the power to make an award that is inconsistent with the provisions of this Agreement or with District of Columbia substantive law."  Dkt. 5-2 at 35.  And section 17 provides: "This agreement is governed by the laws of the District of Columbia, excluding its choice of laws provisions."  *Id.* at 36.  According to NRMP, these provisions establish that the Match Agreement incorporates the D.C. Revised Uniform Arbitration Act ("DCRAA"), D.C. Code § 16-4401 *et seq.*, which confers "exclusive jurisdiction" in the D.C. Superior Court over actions falling under the Act, *see id.* § 16-4426.  The Court is unpersuaded.

As a threshold matter, even if the Match Agreement incorporates the DCRAA, § 16-4426(b) has no bearing on this Court's subject-matter jurisdiction.  "[A]lthough . . . § 16-4426(b) speaks in terms of the 'exclusive jurisdiction' of the D.C. Superior Court," this Court held in *Equitas Disability Advocates, LLC v. Daley, Debofsky & Bryant, P.C.*, 177 F. Supp. 3d 197 (D.D.C. 2016), that, under similar circumstances, § 16-4426 was "best understood to pertain to the proper *venue or forum* for judicial review of an arbitration award."  *Id.* at 207.  The provision cannot "strip" federal courts of subject-matter jurisdiction because, to the extent it so impinges, it is preempted by 28 U.S.C. § 1331, which grants district courts "original jurisdiction" over cases "arising under the Constitution, laws, or treaties of the United States," and 9 U.S.C. § 205, which authorizes a defendant to remove an action that "relates to an arbitration agreement or award falling under the Convention" to federal district court, *id.  Cf. United States v. Peters*, 9 U.S. (5 Cranch) 115, 136 (1809).  As such, sections 15 and 17 of the Match Agreement, at best, serve as forum selection clauses that designate the D.C. Superior Court as the exclusive venue for this suit.

But even that argument—to the extent NRMP raises it—fails. Interpreting sections 15 and 17 of the Match Agreement to confer exclusive venue in the D.C. Superior Court conflicts with the plain language of those provisions. Section 15 states: "Judgment upon the [arbitration] award rendered may be entered in *any court* having jurisdiction thereof." Dkt. 5-2 at 35 (section 15) (emphasis added); *see also id.* at 36 (section 17) ("If any provision of this Agreement is found . . . by *any court* of competent jurisdiction to be invalid, illegal, or unenforceable . . . that provision shall be modified . . . ."). When faced with similar language in *Equitas Disability Advocates, LLC*, this Court concluded that "there is no way to give . . . the word 'any' . . . a plausible meaning" if the Court were to read the "generally worded choice-of-law clause in [the] arbitration agreement" to "confer exclusive jurisdiction on the D.C. Superior Court." 177 F. Supp. 3d at 210, 212. The same is true here. The use of "any court" in section 15 is inconsistent with the contractual specification of a single, exclusive forum, as NRMP contends. *See Matstrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("[A] document should be read to give effect to all its provisions and to render them consistent with each other."); *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013) ("When interpreting a contract, we 'strive to give reasonable effect to all its parts and eschew an interpretation that would render part of it meaningless . . . .'" (quoting *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012))). The better reading of sections 15 and 17 is that they function, instead, as choice-of-law provisions governing the Match Agreement and the arbitrator's rights and responsibilities thereunder.

To be sure, the sentence— "[t]he arbitrator shall not have the power to make an award that is inconsistent . . . with *District of Columbia substantive law*," Dkt. 5-2 at 35 (emphasis added)—arguably comes closer to incorporating the DCRAA than the language in *Equitas*

*Disability Advocates, LLC*, because it extends to the arbitration proceedings and not just "[the parties'] substantive rights and obligations" under the Match Agreement. 177 F. Supp. 3d at 209. But the language still falls short of dictating that D.C. law applies to "the procedures for *enforcing or vacating* a future arbitration award;" it speaks only to "the rights and obligations" of the arbitrator in the course of the arbitration. *Id.* (emphasis added). And, contrary to NRMP's assertion, Dkt. 20 at 10–11, the language is *not* sufficiently analogous to the provision in *Foulger-Pratt Residential Contracting, LLC v. Madrigal Condominiums, LLC*, 779 F. Supp. 2d 100 (D.D.C. 2011), which the Court found to properly incorporate D.C. Code § 16-4426(b). *See id.* at 110. There, the parties specified: "[t]his [a]greement to arbitrate shall be specifically *enforceable pursuant to* and interpreted under *the laws of the District of Columbia*." *Id.* (emphasis added). That differs in a dispositive respect from the language here, which does not cover the enforcement of the arbitration award.

The Court, accordingly, concludes that the Match Agreement does not constrain the Court from adjudicating this action.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand, Dkt. 7, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss

RANDOLPH D. MOSS
United States District Judge

Date: September 26, 2017