**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATIONAL RESIDENT MATCHING PROGRAM,<br><br>*Plaintiff*,<br><br>v.<br><br>MAHMOUD ALASHRY,<br><br>*Defendant.* | Civil Action No. 17-2557 (RDM) |

## MEMORANDUM OPINION

Having denied Plaintiff National Resident Matching Program's ("NRMP's") motion to remand, Dkt. 7, the Court turns to NRMP's motion to vacate the arbitration award in favor of Defendant Mahmoud Alashry ("Dr. Alashry"), Dkt. 10, and Dr. Alashry's cross-motion to confirm, Dkt. 6. The present dispute presents a narrow issue: Did the arbitrator exceed his authority under the parties' agreement when he vacated the sanctions against Dr. Alashry? The Court concludes that he did not, and will, accordingly, deny NRMP's motion to vacate, Dkt. 10, and grant Dr. Alashry's cross-motion to confirm, Dkt. 6.

## I. BACKGROUND

Because the facts of this case are set forth in the Court's prior opinion, *see Nat'l Resident Matching Prog. v. Alashry*, No. 17-cv-2557, slip op. at 1–4 (D.D.C. Sept. 26, 2018) ("*Alashry I*"), the Court will only briefly summarize the relevant background before turning to the arbitrator's decision itself.

Dr. Alashry is a citizen of Egypt, where he earned his medical degree. *Id.* at 1–2. In 2014, he began a post-doctoral research fellowship at the Mayo Clinic in Rochester, Minnesota.

*Id.* at 2. NRMP is a non-profit organization that provides a service by which it matches medical school students and graduates with positions in graduate medical residency and fellowship programs. *Id.* at 1. From mid-January to late February of each year, applicants submit their "rank order lists of preferred programs" to NRMP, and "program directors rank applicants in order of preference for training." Dkt. 10-2 at 40 (Arb. Award ¶ 23). NRMP then "uses a computerized mathematical algorithm to match applicants with programs using the preferences expressed on their rank lists." *Id.* (emphasis omitted).

In September 2015, Dr. Alashry registered to participate in the 2016 Main Residency Match. *Id.* at 44 (Arb. Award ¶ 29). "By the February 24, 2016 deadline, Dr. Alashry completed and submitted his . . . rank order list," and, in doing so, he "committed to accept an appointment if a match resulted." *Id*. at 45 (Arb. Award ¶ 32). On February 22, 2016—before his match date—Dr. Alashry was arrested in Minnesota for solicitation of prostitution, although he was not detained or charged at that time. *Id.* (Arb. Award ¶ 33). Less than a month later, on March 18, 2016, he matched to the internal medicine residency program at North Florida Regional Medical Center ("NFRMC"). *Id.* (Arb. Award ¶ 34). Before he could matriculate, however, Dr. Alashry was criminally charged with solicitation of prostitution on April 1, 2016. *Id.* (Arb. Award ¶ 35). Meanwhile, NFRMC had forwarded an email to Dr. Alashry indicating that he had not yet completed his application to obtain the required J-1 training visa, and, on May 17, 2016, NFRMC sent him a further email. *Id.* at 45–46 (Arb. Award ¶¶ 36, 38). On May 16, 2016, Dr. Alashry appeared for his arraignment and, at that time, he learned that his hearing on the criminal charges would not take place until July 5, 2016, after the start of the residency program. *Id.* at 46 (Arb. Award ¶ 37). Presumably left without other options, Dr. Alashry disclosed "the pending charges" to NFRMC on May 23, 2016. *Id.* at 46 (Arb. Award ¶ 39). In completing "an

[NFRMC] Application Affirmation form" that same day, however, Dr. Alashry responded "no" to the question whether any criminal charges were pending against him. *Id.* (Arb. Award ¶ 40).

After learning of the criminal charge, NFRMC concluded that Dr. Alashry would not be able to obtain a J-1 training visa before his June 2016 start date, and it therefore sought a waiver from NRMP of its match. *Id.* (Arb. Award ¶ 42). NRMP granted the waiver and, subsequently, convened a review panel to investigate whether Dr. Alashry's actions violated the agreement he signed with NRMP ("Match Agreement"). *Id.* at 46–47 (Arb. Award ¶¶ 42, 44–45). The panel issued a report ("Panel Report") concluding that Dr. Alashry's failure to promptly disclose his arrest and criminal charge had violated the Match Agreement, and, the panel imposed a series of sanctions against him. *Id.* at 47 (Arb. Award ¶¶ 46–47). The sanctions included (1) "notifying [NFRMC] of [his] violation and asking that it become part of his permanent record;" (2) a one-year bar "from accepting or starting a position in any program sponsored by a Match-participating institution;" (3) a two-year bar "from participating in future NRMP matches;" and (4) a two-year flag "as a Match violator in the NRMP's Registration, Ranking, and Results . . . system." *Id.* (Arb. Award ¶ 47).

In September 2016, Dr. Alashry initiated arbitration proceedings to vacate the panel's findings of a violation and imposition of sanctions. *Id.* at 37 (Arb. Award ¶ 7). The sole arbitrator, Elliot E. Polebaum, found in Dr. Alashry's favor in most, although not all, respects. *See id.* at 59 (Arb. Award ¶¶ 89–94). After considering the parties' evidence, witness testimony, and post-trial briefing, the arbitrator issued a twenty-six-page decision finding the sanctions against Dr. Alashry arbitrary and capricious, and, accordingly, vacating them. Dkt. 10-2 at 36–61 (Arb. Award). The present dispute concerns whether, in doing so, the arbitrator exceeded the scope of his authority.

NRMP argued in its pre-arbitration hearing brief that Dr. Alashry violated section 4.4 of the Match Agreement "in multiple respects." *Id.* at 49 (Arb. Award ¶ 52). First, "[NRMP] maintain[ed] that Dr. Alashry failed to provide complete[,] timely, and accurate information during the match process . . . both after his arrest on February 22, 2016, and again after his receipt of a summons and complaint on April 1, 2016." *Id.* Second, "[NRMP] . . . contend[ed] that Dr. Alashry's submission to NFRMC of his Applicant Affirmation form, with a 'no' answer to the question whether there were any 'criminal charges now pending' against him independently violated [s]ection 4.4." *Id.* (Arb. Award ¶ 54). Finally, NRMP argued that "Dr. Alashry's conduct violated [s]ection 1 of the Agreement which requires all participants in the Main Residency Match [to] conduct their affairs in an ethical manner." *Id.* (Arb. Award ¶ 55) (internal quotation marks omitted).

With respect to the question of violation, the arbitrator concluded that Dr. Alashry did violate section 4.4 of the Match Agreement, but only to the extent that he "delay[ed] until May 23 in disclosing the criminal charge[]," even though he had received the summons and complaint on April 1. *Id.* at 55 (Arb. Award ¶ 77). The arbitrator disagreed with NRMP that Dr. Alashry had a duty to disclose his arrest before he was charged, however, because he found that "there was no guidance in the NRMP application directing an applicant to disclose any police detention that had not yet resulted in criminal charges." *Id.* at 52 (Arb. Award ¶ 66). The arbitrator also concluded that Dr. Alashry did not violate section 4.4 when he erroneously indicated there were "no" pending criminal charges against him on the Applicant Affirmation Form because "there is no doubt that Dr. Alashry's May 23, 2016, email and his subsequent phone call with . . . the NFRMC Program Director, made clear that there were." *Id.* at 56 (Arb. Award ¶ 79). Finally, the arbitrator noted that Dr. Alashry's alleged violation of section 1 was not subject to his review

4

because it was not included in the Panel Report.  *Id.* at 59 (Arb. Award ¶ 87).  In conclusion, the

arbitrator concluded that, "[i]nsofar as NRMP's findings of violations rested on the

circumstances set forth . . . above, they are in violation of the [Match] Agreement, and are

vacated."  *Id.* at 59 (Arb. Award ¶ 87).

With respect to the sanctions, the arbitrator found that all four measures were "arbitrary

and capricious":

> The sanctions NRMP imposed were for Dr. Alashry's [failure to notify
> NFRMC about his] "legal issues."  There is no explication in the Review Panel
> Report whether each claimed violation of Section 4.4 comprising the "legal
> issues" was necessary to the overall level of sanctions imposed or whether the
> fact of delay in disclosure after April 1 only, would have supported the same
> or any sanctions.  Given the lack of clarity in the Review Panel Report, the
> testimony of NRMP witnesses in conflict with the report, NRMP's failure to
> consider Dr. Alashry's email and oral reports to Dr. Yale disclosing his
> pending criminal charges, and my determination that the violations found by
> NRMP are in important respects not sustainable, the sanctions imposed are
> arbitrary and capricious . . . .

*Id.* (Arb. Award ¶ 88).  Accordingly, the Final Award held that "[t]he sanctions determined in the

Review Panel Report for violations of [s]ection 4.4 of the Agreement . . . are therefore vacated."

*Id.* (Arb. Award ¶ 91).

Dissatisfied with the result, NRMP filed a motion to vacate in the D.C. Superior Court,

alleging that the Match Agreement did not permit an arbitrator to vacate its sanctions, Dkt. 10-1;

Dkt. 10-2, and Dr. Alashry removed the case to this Court, Dkt. 1 at 4–7.  The parties now cross-

move to confirm and to vacate the arbitration award.  Dkt. 6; Dkt. 10.

## II.  LEGAL STANDARD

For purposes of determining whether the arbitrator acted within the scope of his

authority, it is immaterial whether the Federal Arbitration Act ("FAA"), Pub. L. 68-401, 43 Stat.

883 (1925) (codified at 9 U.S.C. § 1 *et seq.*), or the D.C. Revised Uniform Arbitration Act

("DCRAA"), D.C. Code 16-4401 *et seq.*, controls because, under both statutes, "judicial review

of arbitration awards is extremely limited." *Foulger–Pratt Residential Contracting, LLC v.

Madrigal Condominiums, LLC*, 779 F. Supp. 2d 100, 113 (D.D.C. 2011); *see also Bolton v.

Bernabei & Katz, PLLC*, 954 A.2d 953, 959 (D.C. 2008 (same). "A court is . . . not 'authorized

to reconsider the merits of an award even though the parties may allege that the award rests on

errors of fact or on misinterpretation of the contract.'" *Local 689 v. Wash. Metro. Area Transit

Auth.*, 249 F. Supp. 3d 427, 431 (D.D.C. 2017) (quoting *United Paperworkers Int'l Union v.

Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Lazlo N. Tauber M.D. & Assocs. v. Trammell

Crow Real Estate Servs., Inc.*, 738 A.2d 1214, 1217 (D.C. 1999) ("In reviewing whether an

arbitrator has exceeded his powers pursuant to § 16-4311(a)(3), we do not review [the]

arbitration award on the merits." (citation and internal quotation marks omitted)). The Court

must, instead, confirm the award as long as the "arbitrator is even arguably construing or

applying the contract and acting within the scope of his authority." *Major League Baseball

Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *see also Fairman v. District of Columbia*,

934 A.2d 438, 442 (D.C. 2007) ("If an arbitrator 'rules only on matters within the scope of the

governing arbitration clauses, he [will] not exceed his authority . . . .'" (alterations in original)

(quoting *Tauber*, 738 A.2d at 1217)).

## III.  ANALYSIS

For the reasons set forth below, the Court concludes that the arbitrator did not exceed his

authority under the Match Agreement.

### A.    Timeliness of NRMP's Motion to Vacate

As a threshold matter, Dr. Alashry argues that the Court should dismiss NRMP's motion

to vacate as untimely under the FAA, which requires that "notice of a motion to vacate . . . must

be *served . . .* within three months after the award is filed or delivered."  *See* Dkt. 5 at 16

(quoting 9 U.S.C. § 12) (emphasis added); *see also Sharp Corp. v. Hisense USA Corp.*, 292 F.

Supp. 3d 157, 167 (D.D.C. 2017) ("Although the New York Convention does not contain a

statute of limitations . . . the FAA, which supplements the Convention, requires that such actions

be filed within three months after the award is filed or delivered.").  Dr. Alashry asserts that,

although NRMP acknowledged receipt of the award on July 17, 2017, Dkt. 10-2 at 24, it did not

serve its motion to vacate until October 31, 2017—more than two weeks after the 90-day statute

of limitations had run, Dkt. 5-4 (Forbes Aff.).  NRMP, for its part, does not dispute that its

motion is time-barred under the FAA; instead, it contends that the DCRAA governs this action.

Dkt. 9 at 10–13.  Under the DCRAA, a motion to vacate need only "be filed"—not served—

"within 90 days after the movant receives notice of the award."  D.C. Code § 16-4423(c).

NRMP thus argues that the motion is timely because it was filed with the D.C. Superior Court on

October 13, 2017.  Dkt. 9 at 11 (citing Dkt. 9-2).  The Court need not resolve this dispute,

however, because the timely filing requirement is not jurisdictional and, as explained below,

NRMP's motion to vacate fails on the merits in any event.[1]

---

[1] *See Foster v. Turley*, 808 F.2d 38, 41 (10th Cir. 1986) ("[T]he time limit in section 12" of the
FAA is not "jurisdictional in nature;" it is "a statute of limitations, which is subject to waiver.");
*see also Alashry*, slip op. at 8 ("The [DCRAA] cannot 'strip' federal courts of subject-matter
jurisdiction because[,] to the extent it so impinges, it is preempted . . . .").  Although the D.C.
Circuit has never addressed whether section 12 of the FAA imposes a jurisdictional bar, the
Supreme Court's decisions in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), and its progeny
support the conclusion that it is not.  In *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015),
for example, the Court noted that "most time bars are nonjurisdictional;" they "cabin a court's
power only if Congress has 'clearly state[d]' as much."  *Id.* at 1632 (alteration in original)
(quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)).  Here, there is no
indication that Congress intended 9 U.S.C. § 12 to have jurisdictional consequences, and, absent
the type of clear statement contemplated by *Arbaugh* and *Kwai Fun Wong*, the Court must
conclude that the provision is in the nature of a statute of limitations, not a jurisdictional bar.

**B.     Merits of Arbitration Award**

NRMP contends that the arbitration award must be vacated on two grounds: First, it

asserts that the arbitrator "exceeded the authority granted to him under the Agreement when he

set aside NRMP's . . . sanctions in their entirety." Dkt. 10-2 at 25.  According to NRMP, to the

extent the arbitrator disagreed with the sanctions, "he was required under the Agreement to

modify them in such a way that they were no longer considered by him arbitrary and capricious."

*Id.* at 28.  Second, NRMP disagrees with the arbitrator's reasoning; it contends that "the

imposition of sanctions, at least to some degree, was reasonable, rational, justified, and supported

by the underlying facts." Dkt. 10-2 at 26.  "Certainly," NRMP asserts, "at a minimum," one of

the sanctions—"list[ing] [Dr. Alashry] as a violator in NRMP's . . . system"—is "proper because

[the arbitrator] confirmed that Dr. Alashry had violated the agreement." *Id.* at 28.  The Court is

unpersuaded.

NRMP's first argument is foreclosed by the plain language of the Match Agreement.

Contrary to NRMP's assertion, there is no provision *requiring* the arbitrator to "modify

[sanctions] in a way [so] that they [are] no longer . . . arbitrary and capricious." *Id.* at 28.  To the

contrary, section 15 states that:

> no arbitrator shall have the power to modify any sanctions imposed by NRMP
> *unless* (1) the arbitrator overturns a finding by the NRMP of a violation of this
> Agreement or (2) the arbitrator finds that the sanctions imposed by the NRMP
> are either arbitrary and capricious or were imposed outside of the scope of
> potential sanctions set forth in this Agreement and the Violations Policy.

Dkt. 5-2 at 35 (emphasis added).  Here, the arbitrator expressly found that the sanctions against

Dr. Alashry were "arbitrary and capricious." *See* Dkt. 10-2 at 59 (Arb. Award ¶ 88) (explaining

the basis for his finding).  Accordingly, the plain language of the provision authorized him to

vacate the sanctions.

To the extent that NRMP is arguing that the arbitrator acted outside the scope of his

authority because he vacated the sanctions instead of "modify[ing] them," Dkt. 10-2 at 28, that

contention also fails. To be sure, section 15 specifies that the arbitrator "shall have the power to

*modify* any sanctions" upon making certain findings. Dkt. 5-2 at 35 (emphasis added). But the

plain meaning of "modify"—that is, "to make less extreme" or "to make basic or fundamental

changes in," Merriam Webster's Collegiate Dictionary 748 (10th ed. 1996)—does not foreclose

vacating a sanction in its entirety. Vacatur of an award would, of course, effectuate a

"fundamental change[]" in NRMP's sanctions and would render the punishment "less extreme."

*Id.* Further, when section 15 is read as a whole, it becomes apparent that the arbitrator's power

to modify must include the power to vacate; otherwise, upon "overturn[ing] a finding

by . . . NRMP of a violation of [the Match] Agreement," Dkt. 5-2 at 35, the arbitrator would be

powerless to strike the corresponding sanction. This cannot be right. The Match Agreement

itself contemplates sanctions for only "confirmed violation[s]," *id.* at 27 (section 8.2); as a result,

if the arbitrator concludes that no violation occurred, she must have the power to vacate the

corresponding sanctions. Finally, to the extent that there is any ambiguity whether the term

"modify" encompasses vacatur, it must be construed in Dr. Alashry's favor. *Capital City Mortg.*

*Corp. v. Habana Vill. Art & Folklore, Inc.*, 747 A.2d 564, 567–68 (D.C. 2000) ("[I]f, after

applying the rules of contract interpretation, the terms still are not subject to one definite

meaning, . . .  the ambiguities [will] be construed strongly against the drafter." (internal citations

and quotation marks omitted)).

To the extent NRMP takes the more modest position that an arbitrator may vacate the

imposition of sanctions *as a whole* only if she concludes that the findings of violation are also

unsupported *as a whole*, the Court is also unconvinced. Here, the arbitrator wrestled with just

this question, and, indeed, asked the parties to address it in their post-hearing briefs. Dkt. 5-3 at

2. In his decision, the arbitrator then explained that the Panel Report treated Dr. Alashry's

violation of the Match Agreement as a single, undifferentiated violation and did not address

whether the *whole* finding of culpability "was necessary to the overall level of sanctions imposed

or whether the fact of delay in disclosure after April 1 only, would have supported the same or

any sanctions." Dkt. 10-2 at 59 (Arb. Award ¶ 88). "Given the lack of clarity in the . . . Report,

the testimony of NRMP witnesses in conflict with the report, NRMP's failure to consider Dr.

Alashry's email and oral reports to [NFRMC] disclosing his pending criminal charges, and [the

arbitrator's] determination that the violations found by NRMP are in important respects not

sustainable," the arbitrator concluded that "the sanctions imposed [were] arbitrary and

capricious." *Id.* NRMP may disagree with that conclusion, but the arbitrator acted within his

authority when he considered the relevant facts, found that the sanctions, as a whole, were

arbitrary and capricious, and set them aside. *See* Dkt. 5-2 at 35 (Section 15).

NRMP's second basis for vacating the award is even less persuasive. NRMP seems to

suggest, but does not outright argue, that the arbitrator acted improperly because he discounted

relevant evidence or failed to grasp that, at a minimum, Dr. Alashry should have been "list[ed] as

a violator." *See* Dkt. 10-2 at 21–24. That is, however, not a proper ground for vacatur under

either the FAA or the DCRAA. *See* 9 U.S.C. § 10(a) (setting forth the permissible grounds for

vacatur); D.C. Code § 16-4423(a)–(b) (same). Neither statute permits NRMP to relitigate the

merits of the arbitration before this Court. *See, e.g.*, *United Paperworkers Int'l Union*, 484 U.S.

at 36 ("The courts are not authorized to reconsider the merits of an award . . . ."); *Lopata v.*

*Coyne*, 735 A.2d 931, 940 (D.C. 1999) ("[T]his court . . . will not review an arbitration award on

the merits.") (alteration in original) (citation omitted). Indeed, NRMP itself concedes that the

only possible ground for vacatur here is that the arbitrator allegedly exceeded the scope of his authority, *see* Dkt. 9 at 13, and, as explained above, he did not.

Given that there is no basis to vacate the arbitration award, the Court will confirm the award in favor of Dr. Alashry.

<strong>CONCLUSION</strong>

For the foregoing reasons, Plaintiff's motion to vacate the arbitration award, Dkt. 10, is hereby denied, and Defendant's cross-motion to confirm the award, Dkt. 6, is hereby granted.

A separate order will issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  September 27, 2018

11